The Elgin, Joliet .and Eastern Railway Company

*v.*

S. M. Hohenshell, County Treasurer.

*Opinion filed December 18, 1901.*

1. Drainage—*district organized under Levee act need not serve personal notice on resident land owners.* Under section 3 of the Levee act of 1879 the only mode of notice of the filing of a petition to organize a district is by posting and publishing notices as to resident land owners and by mailing copies to non-resident owners.

2. Same—*when railroad company must be regarded as a resident land owner.* An objection by a railroad company to an application for judgment of sale for the second assessment by a drainage district, that the statute required resident land owners to be notified by personal written notice whereas it was not so notified, is an admission that the company is a resident land owner, and the court is justified in acting thereon in the absence of contrary proof.

3. Same—*when owner cannot complain that he was not paid in cash for land taken.* If a land owner in a drainage district consents that the amount allowed him for land taken shall be applied to the reduction of the benefits assessed, and pays the excess of benefits over the amount allowed him for compensation, he cannot complain that he was not paid in cash for his land.

4. Same—*right to compensation cannot be litigated on an application for judgment of sale.* Upon application for judgment of sale for the second assessment by a drainage district, an objector cannot litigate his right of action to recover compensation from the district for land taken in the construction of the ditch.

Appeal from the County Court of Grundy county; the Hon. A. R. Jordan, Judge, presiding.

J. L. O'Donnell, for appellant.

Lincoln & Stead, for appellee.

Mr. Justice Boggs delivered the opinion of the court:

To the application of the appellee treasurer and *ex officio* collector of Grundy county for judgment and order of sale against the property of the appellant company for delinquent special tax of the Claypool drainage and levee district, being the second assessment made by the

district, the appellant company filed objections, as follows: "(1) Objector received no notice of the organization of said district; (2) this objector received no notice of the classification of lands in said district; (3) this objector received no notice of the levy of any tax or assessment by the officers of said district; (4) said district entered upon the lands of this defendant and constructed its main ditch and channel across said lands and never paid to this objector any compensation for the taking or damaging of said lands, as required by law; (5) there is no record of the steps necessary for said levy and assessment; (7) the said levee and drainage district did not take the proper steps in organization of said district; (8) no proper levy of said tax was ever made according to benefits upon the land; (9) no legal notice was given of the organization of said district and no legal notice given of the classification of lands, nor of the making of an assessment upon the same." The evidence *pro et con* was heard by the court, the objections were overruled and judgment entered according to the prayer of the application of the collector, and the railway company has brought the record here by appeal.

Objections Nos. 1, 2, 3 and 9 grow out of a misapprehension in the mind of counsel for the appellant as to the character of notice required to be given by the provisions of the act under which the said Claypool drainage and levee district was organized. Counsel insists the statute requires that notice to all owners of lands in the district who are residents of the county shall be in writing and be personally served, and that notice by publication can only be made to such owners as are shown to be non-residents of the county. In support of this insistence counsel cites us to section 19 of chapter 42 of Hurd's Statutes of 1899. Said chapter 42 contains several different enactments of the legislature, of which two, only, have sections numbered 19. The first of these acts was adopted May 29, 1879, and is entitled "An act to provide

for the construction, reparation and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts." It contains 74 sections, and constitutes paragraphs 1 to 74, inclusive, of said chapter. The Claypool drainage and levee district was organized under this enactment. Section 19 thereof, being paragraph 19 of the chapter, prescribes the notice to be given of the time and place when and where the jury who, having acted under the authority of prior sections of the act, have completed their assessment of damages and benefits to and against the lands in the district will attend to hear objections to such assessments. The notice required by said section 19 is by posting and publishing notices for a period of at least ten days, in the manner required by section 3 of the act, (paragraph 3 of the chapter). The manner of giving notices prescribed by said section 3 is by posting eleven notices, addressed "to all persons interested," one to be posted at the door of the court house of the county and the other ten in as many places in the proposed district, and by publishing a copy of such notice at least once each week, for three successive weeks, in some newspaper published in the county; that if any of the owners of lands in the district are non-residents of the county or counties wherein the district is situate, an affidavit shall be filed giving their names and places of residence, if known or can be ascertained upon diligent inquiry, and the clerk of the county court shall send a copy of the notice to each of said non-residents by mail. There is here no requirement that land owners shall be personally served with written notices. There is nothing in the record to show the appellant company is a non-resident of the county. An affidavit of one of the commissioners appears in the record, giving the names and addresses (when known) of a number of persons and corporations alleged to be non-residents, but the name of the appellant

193—11

company is not there included. It was regarded a resident of the district by the commissioners of the district. No proof in behalf of the appellant company tending to show the place of its residence was produced. The contention of its counsel is, resident land owners were to be notified by a "personal, written notice," and his complaint being the company was not so notified, is an admission the company was resident of the district. The county court was justified in regarding the appellant company as of the class of land owners to be notified by posting and publishing the notices, and it was not questioned, but such notices were duly and properly posted and published. The posting and publishing of the notices as provided by said section 3 was all that could be required to confer jurisdiction of resident land owners.

Said chapter 42 of the statutes contains another enactment. It was approved June 27, 1885, and is entitled "An act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named." This act contains 78 sections, the first section being paragraph 75 of said chapter 42. Section 19 of this act (paragraph 93 of the chapter) provides the manner of giving notice to land owners when and where to appear before a justice of the peace in a proceeding to condemn the right of way for the ditches or drains of a district authorized to be organized under that act. The notice to be given to owners resident of the county is a notice in writing to be personally served on such owners, informing them of the time and place when the condemnation proceedings will be heard. Counsel for the appellant company is in error in insisting the provisions of this section prescribe the character of notice which the appellant company was entitled to receive. This section has no reference to "drainage and levee districts" organized under the act of 1879, as was the Claypool drainage and levee district, but to districts organized under said act of 1885. Districts organized under the act of 1879 are,

as section 2 of the act provides, to be known as "drainage and levee districts." The organizations effected under the act of 1885 are given numbers and designated accordingly. (Chap. 42, sec. 15, par. 89.) The only mode of notice or service to owners of lands required by any of the provisions of the said act of 1879 is that specified in said section 3 of the act, namely, by posting and publishing notices as to resident owners and mailing copies of such notices to non-resident owners. There was no attempt to prove failure to comply with the requirements of said section 3. Objections 1, 2, 3 and 9 were therefore properly overruled.

Objection No. 4, in substance, is, that the drainage district has constructed its ditch across the right of way of the appellant company without having paid any compensation for the land taken and damaged. It is the second assessment made by the district that is here sought to be collected. The first assessment is that of damages and benefits authorized to be made by a jury empaneled as directed by section 16 of the act of 1879, (chap. 42, par. 16,) upon the organization of the district. Section 17 (being also paragraph 17) directs the manner or course to be pursued by the jury in making and reporting their assessment of damages and benefits. The damages there referred to, by the express provisions of section 39, (paragraph 39,) include compensation to the land owner for any land taken for the right of way of the ditch, and the jury are directed, by the terms of said section 17, (paragraph 17,) to strike the balance of benefits over damages, (including compensation for land taken,) or the balance of damages over benefits, and report such excess of benefits or damages, as the case may be. The report of the jury of this first assessment was introduced in evidence, and from such report it does not expressly or in terms appear the appellant was allowed any amount whatever for the land taken for the ditch, but in the column in such report wherein said section 17 of the act of 1879 provides

the amount of the excess of benefits over such compensation for the land taken shall be set down, and which column bears this heading, "Excess of benefits over damages," appears in figures $176.40. It was proven the appellant company paid such balance. We held in *Ginn* v. *Moultrie Drainage District*, 188 Ill. 305, the land owner could not be required to accept payment of the just compensation for land taken by way of a credit on the benefits assessed against his property; that said section 17 was to that extent in contravention of constitutional guarantees of the land owner. There is, however, no reason why the land owner may not willingly consent that the amount allowed him for compensation for the land taken shall be applied to the reduction of the benefits assessed against his land, and if he does so and pays the balance or excess of benefits over the amount allowed him, he cannot complain that he was not paid in cash for the land taken.

It was proven in the case at bar that the appellant company voluntarily paid the sum of $176.40 so assessed against its right of way as "excess of benefits over damages." Furthermore, the evidence of the superintendent of the appellant company showed that the right of way of the ditch passed under a trestle which carried the track of appellant's road over a water-course or natural depression, and other testimony tended to show said superintendent was present when the ditch was constructed under the railroad tracks, and that the ditch was so constructed under the said railway tracks under the direction of such superintendent. The appellee, for these reasons, insists the appellant company must be deemed estopped to insist the drainage district was without right to construct its ditch across the right of way of the company or to question the regularity of the proceedings resulting in the assessment, which it voluntarily paid, and recognized as legal and binding by voluntarily surrendering a right of way for the ditch over its right

of way. This contention of estoppel we need not determine, for the reason, without regard thereto, it is perfectly clear, even if the appellant company has a right of action to recover compensation for the land taken in the construction of the ditch, that right of action cannot be litigated before the county court in the disposition of the application of the county collector for judgment for this delinquent unpaid second assessment. Objection No. 4 was properly overruled.

Counsel for the appellant company, in his brief, does not present any reason, other than hereinbefore discussed, in support of the insistence the court erred in overruling his remaining objections.

The judgment of the county court must be and is affirmed.                    *Judgment affirmed.*